Good morning, your honors. I am Land Weyland and I represent Mrs. Mutuku. May it please the court. Yolanda Mutuku applied for political asylum because her political opponents in Kenya had twice tried to kill her. After listening to six hours of testimony, which he summarized accurately in his oral decision, the immigration judge did not utter a single word in his oral decision evaluating or discussing any of this evidence. He made no findings regarding credibility. He did not offer an opinion as to whether these incidents had even occurred. He made no findings regarding past persecution. And he misused a country report issued by the State Department to find that conditions in Kenya were going to change so fundamentally that Mrs. Mutuku would have no fear of returning to that country. Counsel, let me ask you a question about what issue or issues are in front of us. As I understand your briefing, we are not looking at the asylum claim. That is correct. It is withholding only. We're looking at the withholding claim. That is correct. And my question to you concerns what the remedy should be if we agree with your basic argument that the BIA improperly relied on the country conditions report to predict what would happen. Would we be at liberty to grant withholding ourselves, or would we be required to remand to the agency under Ventura and Thomas? Your Honor, because of the judge's holdings regarding credibility, which he made no credibility findings, he was completely silent. And the law of the circuit is that when the judge is silent regarding credibility, that the testimony should be taken to be credible. Well, that doesn't really answer my procedural question. Should we grant the relief? Yes, Your Honor. Are we empowered to? That's what she's asking. Are we empowered to grant that relief, or is that relief that can be granted only by the BIA or the Attorney General, and we would have to remand it under whatever conditions? Quite frankly, Your Honor, I'm not prepared to address that particular issue. Are you familiar with Ventura? Yes, I am. But I did not bring myself up to date on that, so I don't remember the details of Ventura. Well, Ventura says that if the immigration judge has not considered the issue because they've found the person incredible, we've said, no, they're credible, but the I.J. has not then evaluated the evidence, Ventura says, send it back and let the immigration judge perform that function, that we are not supposed to be the ones who decide whether there was persecution or not. We should at least let the I.J. have a look at it. Well, I have to agree that the judge was totally silent regarding the issues in this case. After he summarized factually what happened in the first part of our interview, he never came back to any of the testimony or witnesses at all. And he made the only reason he found her to be not credible was that he said she hadn't mentioned that in her written application. But he did not make any credibility findings either. Well, but in addition, let me just be forthright about what's of concern to me, and I'd like the government to address this as well. There was a finding or a holding that there were changed country conditions. And if we agree with your argument that that is not demonstrated, that there is no substantial evidence to support that, the agency has not looked at the case in the light of unchanged country conditions. And so I guess my question is whether we have the authority to do that in the first instance or whether we would have to send it back saying, now reanalyze this as if country conditions remained the same. Frank, can I have to agree with you on that? It was a question. I'm asking which of those two alternatives. So I guess we'd have to follow one of those two. Because the judge, who otherwise is an extremely good judge, just completely did not do his job in this case, and he did not discuss the facts of the case. He does make a couple of peripheral references to the fact that these incidents may have occurred, but he did make no attempt to evaluate that if they had But he did something, he's going in a different direction. So we quite frankly don't have anything on the record that tells us what the judge thought, and that judge is now retired. All right. I want you to save, you want to save four minutes for rebuttal? Yes, Your Honor, if I may. So do you have the answer to that question? I believe so, Your Honor. Under Ventura, this Court would be required to remand the case if it were to find that substantial evidence did not support the agency's decision of changed country conditions in Kenya. Well, it's obvious that there's no support for that conclusion. Well, the country He just used the wrong country reports. And the present government All right. I'll just leave it at that. I think in the sequence of things, the country report was prepared after the President had been in office one day or a very short time, and the IJ drew all sorts of conclusions that there was now a strong presidency because of the one-line sentence. That's not supported anywhere. And then the report went on to talk about the deplorable conditions that still persisted there, so there's nothing in that report that would support what the IJ did. So the question is, now what do we do? There's a twofold answer to that question, Your Honors. The first is that the report does have evidence supporting the agency's decision. Most of the background evidence in that report regarding violence related to the Democratic Party is regarding violence that occurred prior to the 2002 election. Well, but that's all that could be reported, because time-wise, nothing else had taken place. Correct. But the report does also indicate that the new President was sworn in without incident three days after the elections, and that things had proceeded calmly after that point. For three or four days, but what? That is correct. That is correct. He was only in office for one day. In that report, you're correct. And part of the argument that was made to the Board was that the next country report should have been considered, the 2003 report. And in that report, it's not in the record, but in the context of briefing, it has been addressed. And so there is some of the report quoted in the briefings before this panel. But we can't consider that, because aren't we just reviewing what the agency did? I mean, isn't that precisely one of the issues that Ventura took us to task for is going, you know, making our own decision beyond what the agency did? Correct. I'm not arguing that that's evidence in the record. It's just a prejudice argument regarding whether or not remand is futile or not. Well, we don't – I don't see anything in the Supreme Court's jurisprudence that allows us to not remand something if, in our opinion, it would be futile. We don't have supervisory authority over an agency the way we do over a lower court. So what authority can you cite that says we could make a futility exception to remand? Only to the extent that this Court has in the past and has the ability to take administrative or judicial notice of country reports. What was your answer again? That this Court in the past has taken judicial notice of country reports, not in terms of evidence in the case, but in terms of changed country conditions. Well, but, counsel, time and time again, the government tells us that we should be sending these things back rather than deciding them ourselves. And you're asking us to decide based on something that wasn't before the I.J. My argument before this panel, to be clear, is that the substantial evidence does support the agency's decision. If this Court is defined that substantial evidence does not support the decision of changed country conditions, then the Court does need to remand the proceedings. Yes. Well, what supports changed country conditions that's in this record? The regime change itself is sufficient. Well, you know, that is just such a wisp of evidence, you know. Well, this Court has found in many numerous – in many other cases that a regime change is – In other words, you're saying we shouldn't come to the conclusion that seems obvious in this – in this record that she's entitled to withholding. And in addition to that, the record clearly shows past persecution, which sets up the And the government has the burden of showing – of rebutting that presumption. Nothing was done about that either. So this case is really in many ways a – well, maybe not an abdication of the agency's to me like it comes close to that. So, I mean, given those circumstances, and you're telling us now that we should take judicial notice of something that is in the record. So doesn't that sort of point that maybe we ought to just decide this, send it back? You know, you've got – you've got – if it goes back, is it going to go back to the same person that bungled the job? I guess that you're telling me that he's now retired? I don't know. If counsel says that this immigration judge is retired, then that's possible. I don't know about the judge's income. I don't know about that. But it would be sent back to the same immigration court. And to be clear, my argument is not that this Court should take judicial notice. It's in the context of briefing that the 2003 Country Report was discussed, and in that context, if this Court were to consider it. I wanted to ask you about the credibility determination of the I.J. He clearly hadn't read the record because there was clear evidence that this truck incident was mentioned. And that seemed to be the principal basis for the lack of credibility determination. Correct. And that was erroneous. However, the board affirmed, the Board of Immigration Appeals affirmed the immigration judge's decision based on the burden of proof alternative determination. My sense was that the BIA had taken at face value the I.J.'s statement that there was a discrepancy there. So this is, in my view, a bungled case that just simply has to go back. If this Court is to consider that there is no substantial evidence, then yes. It is clear, though, that the board did affirm the immigration judge's decision solely based on the changed country conditions finding and not the credibility determination. So that's not before this Court at this time. Okay. If there are no further questions. No, I think we've beaten you up enough. Thank you. No, you're tough. Now I'm going to beat you up a little bit. I'm ready. Well, don't, you know, he's limped up to you. Well, I'm a limper, too, so. So am I, so. But your brief was not a very good brief, and you didn't follow our rules. There's no table of contents. So I think you need to pay more attention to your lawyering and do it right. Thank you, Your Honor. If this Court. You look good. You look like you could have been Speaker of the House. Thank you. I never aspired to politics. I didn't want to do that. If this Court should find that there's substantial evidence of past persecution, then it is the burden of the government to introduce evidence that shows changed country conditions. The government introduced nothing. Even the 2002 report that was introduced, a country report, was introduced by me. So the government introduced nothing. And if the government doesn't carry that burden, then the finding that the past persecution existed is the finding of this, that has to be the finding. So I think this Court can go ahead and make a decision on the merits of this matter. Well, is this the first appeal you've filed in this Court? No, I've been here three times before. Well, you need to be more careful. Thank you, Your Honor. I mean, we send you a kit, don't we, when you file an appeal? Yes. We send you, we're very kind, this Court, and public service, and we practically send you a do-it-yourself kit on taking an appeal. It's all there. Next time I do one of these appeals, I'll be doubly careful. Read it, you know. Thank you. Okay. And, you know, we do keep tabs on this type of failure to follow our rules. All right. The matter is submitted.
judges: Fletcher B. , Pregerson, Graber